33402. GENERAL MOTORS CORPORATION *v.* PRUITT.

DECIDED MARCH 15, 1951.' REHEARING DENIED MARCH 29, 1951.

624

*Neely, Marshall & Greene,* for plaintiff in error.

*T. Elton Drake, Harry E. Monroe, John M. Williams,* contra.

GARDNER, J. It is contended here by distinguished counsel for the employer that the burden of proof was on the claimant to establish that he had sustained an accident at a definite time on a specific date and that his injuries were the result of such accident. In support of this contention our attention is called to *Harper* v. *National Traffic Guard Co.,* 73 *Ga. App.* 385 (36 S. E. 2d, 842), and Code §§ 114-303, 114-304, and 114-305. In this connection it is contended that since the claimant did not remember the exact date when he was injured and from other evidence in the case, that the hearing director in the first instance found himself in such a serious state of doubt that he tried to compromise the matter; that in the award of the hearing director he found that the evidence was indefinite as to the date of the alleged accident and concluded that the claimant was hurt in May and in June, and that he ought to be paid something. While it is true that the claimant testified that he did not remember the exact date, upon examining the whole record, we think that the employer supplied the exact dates of the two injuries which the claimant received by introducing the records which included the dates when the claimant was injured and sent

to the office of the doctor of the employer for treatment. The first injury which the claimant received while in the course of his employment and arising out of his employment was during the month of May, 1949. He was treated for this injury by Dr. Kelley, the employer's doctor, who strapped his back. For this injury he was seen by Dr. Kelley several times, and after the employer's doctor removed the bandages, the record reveals that the claimant, although his back was weak, continued with his work. The claimant testified that he received a second injury and that he believed the date was June 10, but he was unable to testify as to the exact date. The employer's record showed the date of this second injury to be May 18, 1949. On this date the claimant sustained a fall while building an oven, at the time he was working atop an oven about seven feet from the floor. He stepped on a metal section which was unbolted, causing it to fly up like a trap door. The claimant fell through the opening thus caused, striking his shoulder and side just below the belt line, on a stepladder. The fall caused claimant to lose consciousness after striking the stepladder in the fall. Companion employees working with the claimant at the time he fell, sustained the evidence of the claimant as to the fall, the manner in which it occurred, and the result of a short period of unconsciousness therefrom. For the injury received by the fall the claimant was again treated by Dr. Kelley. A few days later his lower back and side hurt him so much, he testified, that he told his general foreman that he could hardly bend his back. His foreman sent him back to Dr. Kelley, who x-rayed his upper back and ribs, and Dr. Kelley again said that the claimant did not have any broken bones and that he would be all right. The evidence reveals that the claimant continued to work for the employer from that time until July 30, 1949, on which day he told his foreman that he could not make it, and that he was going home. During the time from his last injury until July 30, the claimant was absent on several occasions.

The employer's evidence reveals that the claimant gave various reasons for being absent during that period of time, including colds, absence of his wife who was in Florida, and that the claimant was addicted to the excessive use of alcohol; that the employer assisted him by inducing the claimant to take the

Alcoholics Anonymous treatment. The claimant was never discharged, however. The reasons the employer gave for retaining the claimant after knowing of such addiction was that the claimant was an expert welder and an authority on that subject and that the employer wanted to try to help the claimant and that they thus retained him.

The State Board of Workmen's Compensation was authorized from the evidence to find that after July 30, 1949, the claimant testified he told his foreman he could not "make it." He again reported to Dr. Kelley, the employer's doctor, for treatment. Dr. Kelley refused any further treatment. The claimant reported to his family physician, Dr. Burns of Gainesville, Georgia. After an examination Dr. Burns recommended hospitalization for the claimant, and the claimant was sent to Oliver General Hospital in Augusta. .The evidence further revealed that the next morning after July 30, he was arising from bed, and as he was doing so the claimant felt a sharp pain in the lower part of his back. There was medical authority to the effect that a certain movement such as getting out of bed suddenly could cause a displaced disc and the board was authorized to find that the injury received from the fall which the claimant suffered could cause it. The claimant remained in Oliver General Hospital in Augusta, Georgia, from August 1, 1949, to August 21, 1949. At that time he asked permission to try to see if he could enter Lawson General Hospital, which was nearer his home. Due to the crowded conditions at Lawson General Hospital the claimant could not enter. He returned to Oliver General Hospital on September 8, and remained there until November 4, 1949. During the latter period of hospitalization, the claimant underwent an operation for an injury on his lower vertebra. After the claimant returned to his home in Gainesville, Georgia he was examined by Dr. Sandison on January 8, 1950, and his permanent disability was rated at that time at 50%. The claimant testified as to an operation on his back but he did not know just what kind of an operation it was. Dr. Sandison testified as to an incision or scar on the claimant's back which indicated an operation, and by x-ray it was revealed that there was an injury to the claimant's vertebra and that there was no fusion. Over objection of the employer's counsel,

Dr. Sandison was permitted to testify, in giving the history of the case which he received from the claimant, that the injury for which he was given the operation was a displaced disc. It is contended by counsel for the employer that there is no competent evidence to sustain the claimant's contentions or the findings made by the board. It is contended by the employer that the testimony that since the claimant was injured in May of 1949 and worked regularly, making a great deal of overtime between May and July, 1949, and that on the morning of July 31, the claimant, after he quit work, when he started to get out of bed, felt a catch in his back, was insufficient to sustain the findings of Dr. Sandison made in January, 1950. It is contended that Dr. Sandison's testimony is not legal and is nothing more than theory or speculation, or a guess based upon assumed facts not supported by testimony. It is further contended that the findings of the board are based upon speculation, theory and conjecture and it is contended further by the employer that if the conversation between the claimant and Dr. Sandison is stricken out of the record there is no evidence in the record to support the award.

We have read very carefully all the evidence in the case by each witness. We have reached the conclusion that there is sufficient competent evidence to sustain the award of the full board of the State Board of Workmen's Compensation.

It is contended by counsel for the claimant that the matters of colds, intoxication and the wages which the claimant received subsequently to the accident but prior to the beginning of the disability have no bearing on the case before the court; that the dates of the injuries were supplied by the evidence of the employer. It is further contended, and we think correctly, that the employment of the claimant by the employer is undisputed; that the fall from the oven and the injuries resulting therefrom were established beyond peradventure; that employees of the employer, Mr. Stroud and Mr. Dutton were eye-witnesses to the fall from the oven and another employee of the employer, Mr. Lee, testified on behalf of the employee, and stated that the claimant reported an accident and injury to him on May 18, 1949; that Dr. Kelley, in testifying for the employer, testified that he had treated the claimant on April 21 for injury to the

claimant's back; that he saw the claimant on several occasions after that time; that he also treated the claimant for a second injury on May 18, 1949 (that is the date claimant fell from the oven), and subsequently. As to disability, the claimant testified that he worked as long as he could after the injuries which he received at the plant of the employer and that on July 30 he was unable to continue his work and so informed his foreman. A Mr. Stroud, a companion employee, testified that after the claimant's fall from the top of the oven he heard the claimant complain several times about hurting his side.

From the other evidence in the record, and including the above evidence, we have concluded that the award is supported by some competent evidence, and established the three essential elements to entitle the claimant to compensation as prescribed by the principles of law under the Workmen's Compensation Act. Those three elements are (1) employment; (2) accident arising out of and within the course of his employment; (3) disability as a result of the accident. The record reveals that the weekly wage of the claimant was $90 per week.

The judge of the Superior Court of DeKalb County did not err, under this record, in sustaining the award.

*Judgment affirmed. MacIntyre, P.J., and Townsend, J., concur.*